[No. 1947.]

H. J. WOODWORTH *v.* THE STATE.

| 20 | 375 |
|----|----|
| 36 | 309 |
| d37 | 400 |

1. CONSPIRACY — EVIDENCE — CHARGE OF THE COURT — CASE STATED.— The indictment in this case charged the defendant, and one H. and one W., with a conspiracy to commit burglary. The evidence on the trial of the defendant not only failed to inculpate W., but positively exonerated him. The trial court charged the jury that if the evidence showed a conspiracy between the defendant and H., the offense was complete, and that the State was not required to prove that W. was also a party to the conspiracy, and refused requested instructions to the effect that, "The State has charged a conspiracy between defendant, H. and W., and this allegation must be proved beyond a reasonable doubt," and "the State must make out a conspiracy as alleged." It is an established rule of criminal procedure that "the proof for the prosecution should cover every particular (of the indictment), whether of act or intent, or of the place or time of the act, essential in a *prima facie* case. But it need not extend to surplusage, unless rendered material by the form of the allegation." *Held*, that under this rule the allegation as to W. could be treated as surplusage, and as not rendered material by the form of the allegation, and it was, therefore, not essential that it be proved. The charge as given was correct, and the special charges were properly refused.

2. SAME — TERM DEFINED — FACT CASE.— "AGREEMENT," as defined by legal lexicographers, is "a coming together of parties in opinion or determination; the union of two or more minds in a thing done or to be done; a mutual assent to do a thing." (A conspiracy cannot be committed by one person alone, and it cannot be committed by two when there is no concurrence of purpose and mind, and when the concurrence or purpose on the part of one is unreal or feigned.) See the opinion *in extenso*, and the statement of the case, for evidence *held* insufficient to support a conviction for conspiracy, inasmuch as it fails to establish a concurrence of purpose on the part of the parties charged in the indictment.

APPEAL from the District Court of Burleson. Tried below before the Hon. I. B. McFarland.

The indictment in this case charged the appellant with conspiring with one Ben. Hunt and one Charles Withers to commit the crime of burglary in the night-time by forcibly entering the store-house of J. T. Reeves & Bro., in said Burleson county, Texas, with the intent to steal therefrom. The conspiracy is charged to have been entered into on the 13th day of November, 1885. Appellant, being alone upon trial, was convicted, and his punishment was assessed by the jury at confinement in the penitentiary for the term of four years.

B. B. Hunt was the first witness for the State. He testified that the defendant and Withers came to Caldwell, in Burleson county, Texas, a few days before the alleged commission of the offense for which defendant was now on trial. The two frequented the saloon

in Caldwell of which the witness was the proprietor. The defendant particularly talked with the witness. He spoke frequently of his visits to different parts of the world. He talked with witness a great deal, and many times about Chili. On one occasion the defendant asked permission of witness to write a letter on his desk in the back room, in which the witness kept his safe. While the defendant was thus engaged, witness went into the room and deposited some money in his safe. On the next day the defendant remarked to witness: "People about town say that you are a hard one; that you have no conscience." Witness became indignant, and asked defendant what he meant. Defendant replied that he did not intend to offend witness, and merely repeated what people said. He then asked the witness: "If you were engaged in an enterprise with another party, would you go back on him?" Witness, becoming satisfied that defendant was meditating an unlawful enterprise of some kind, determined to discover, thwart and expose it. He therefore assured the defendant that he would not betray a confederate in any kind of an enterprise, and proposed a confidential talk about Chili. They found retired seats on some kegs near the saloon, when witness asked defendant what he meant by asking him if he would "go back" on an associate in an enterprise. Defendant replied that he could make a "good thing" in Caldwell if he could find a man who would go in with him and not "give him away." Witness replied that he would like to know what defendant proposed to do, before he went in. Defendant then said that it was a perfectly easy undertaking to rob any of the safes in Caldwell; that most of them were as easy to break into as pasteboard boxes; that he, defendant, was an expert in the business, and that, if witness would embark with him in the work in Caldwell, a division of the spoils would benefit both. He, defendant, spoke particularly of the safe of J. T. Reeves & Bro., which safe, he said, was especially easy to open. He then asked witness what amount of money he thought Reeves & Bro. had on hand. Witness replied that, as they were buying cotton, it was likely that they kept on hand as much as $5,000. Defendant mentioned other safes in town, and said that he could get into any of them, if he had time. He then told the witness that, while he, witness, was putting his money in the safe on the day before, he, defendant, pretending to be writing, counted the money as it went in, and told the witness the exact amount he put in. He then advised witness not to keep money in that safe; that it was a very easy safe to get into, and that he could go through it without any trouble whatever, and in a very short time.

The conversation then turned upon Withers. Defendant said that Withers was a "regular guy," and that he intended, at his first chance, to "shake" him; that he had him only as a temporary convenience. About this time Withers came up, and defendant said to him: "I have struck a job, and am going to clerk in a saloon." Withers replied: "You will make a h—ll of a clerk." Withers turned and went off without further remark, and took no part at any time in the conversation between the witness and the defendant. The witness and defendant then entered into a positive agreement to break into and enter the store-house of J. T. Reeves & Bro., and to break and rob their safe of its money. Withers did not enter into the agreement. The agreement was confined to the witness and defendant; it was entered into on the 13th day of November, 1885, and it contemplated the robbery of the safe in the store-house of J. T. Reeves & Bro. Having reached this agreement, the witness and the defendant separated to meet at moon-down that night at a point near Reeves & Bro.'s store, to carry the project into execution. Prior to this agreement the defendant, several times, asked the witness about the merchants in town, their commercial standing, the amount of business they transacted, and which of them did the largest business. He oftenest spoke of and asked about Reeves & Bro. Witness entered into this agreement with no criminal intent whatever. He had no intention to perform his part of it. His one sole purpose was to entrap the defendant into the very act, and secure his arrest while in the very act of despoiling the safe. He did not intend to permit the defendant to get away with a dollar — or to get away at all. He did not intend to get a dollar himself. He intended and expected to assist in the arrest of the defendant at the opportune moment. In the execution of his plan the witness, as soon as he and defendant separated, dispatched a note to Sheriff Wilson, by private messenger, informing him of the conspiracy, and advising him to be convenient with ample assistance, at the proper time, and co-operate with witness in the arrest. It was about 11 o'clock at night when witness next met the defendant,— an hour at least before the time agreed upon for the robbery. Defendant proposed to postpone the job until the following night. Thereupon witness informed Sheriff Wilson that the defendant had become alarmed, and Wilson arrested him forthwith. Withers was found and arrested later. During the conversation in which the agreement was entered into by witness and defendant, the defendant said: "It will be easier to do the job than to guard ourselves the next day,"— that he was a stranger in town

and would naturally come under suspicion; especially if he left town at once, and he would therefore have to remain in Caldwell over the succeeding night; that, in the event of his arrest, the witness must claim him as an old and intimate friend visiting him after many years' separation, and be prepared to establish an *alibi* for him. This, he suggested, witness was able to do, as he was an old resident of Caldwell and not likely to fall under suspicion.

Sheriff S. G. Wilson testified, for the State, that he received B. B. Hunt's note a few minutes after it was written. Hunt wrote that he had agreed with defendant to rob Reeves & Bro.'s store on that night, and suggested that witness be on hand to arrest defendant, in which arrest Hunt promised to assist. The witness, fearful that defendant and Withers would escape, posted guards at the railroad depot, and at other places in town. It was the intention of the witness to be ready at Reeves & Bro.'s store, but, just before the time appointed for the burglary, Hunt sent witness word that defendant had taken alarm. Witness thereupon went to W. F. Gay & Co.'s saloon and arrested the defendant. He found no burglar's tools upon his person. He arrested Charles Withers a few minutes later, and found upon his person a bottle containing a white substance of some kind that looked like acid or soda.

The State proved by several witnesses that defendant and Withers claimed to be and called each other partners. They frequently asked about the business of the several merchants in town, which of them did the best business, and which was the wealthiest. They asked on several occasions if B. B. Hunt was a man who would adhere to or "go back on a man." It was further proved that defendant and Withers came to Caldwell together; that defendant said they came from El Paso, and Withers said they came from Dallas.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney-General, for the State. 1st. "Is it a conspiracy where two persons agree to commit a felony, but one of them has no intention of committing the felony, but merely agrees to do so, in order to entrap the other party?"

In answer to the above question, propounded by the court, appellee says that by article 800 of the Penal Code, "a conspiracy" is defined as "an agreement entered into between *two or more* persons to commit any one of the offenses hereafter named," etc.

By article 801, Penal Code, "the offense of conspiracy is complete although the parties conspiring do not proceed to effect the object for which they have so unlawfully combined."

By article 802, Penal Code, it is provided that, "before any conviction can be had for the offense of conspiracy, it must appear that there was a positive agreement to commit one of the offenses hereafter named in this chapter. It will not be sufficient that such agreement was contemplated by the parties charged."

By the provisions of article 804, Penal Code, burglary is one of the offenses named.

From these articles of the Penal Code it seems that an *agreement* to commit one of the felonies named is absolutely required to constitute the offense of conspiracy, and such agreement must be entered into between two or more persons. Now an *agreement* is by Webster defined to be "The union of two or more minds in a thing done or to be done; a coupling or knitting together of minds; hence a bargain, compact or contract." This definition, of course, is applied to legal agreements, but the same elements must enter into an agreement between two or more persons to commit a felony, to make the agreement complete. Without a union of two or more minds in the thing to be done, without a coupling or knitting together of two or more minds, which met, united and centered upon the thing *to be done*, it would seem there could be no agreement to commit a felony. Where there are two persons apparently conspiring to commit a felony, and one of the two intends to commit it, while the other intends that its commission shall be prevented through his agency, exertions and endeavors, there can be no union or knitting together, or meeting of the minds of such persons upon the thing intended by the one to be done and by the other to be prevented. But one of the two intends to commit the felony. The law absolutely requires two persons in the offense of conspiracy. A man cannot conspire alone. (1 Bishop on Crim. Law, 801, and 2 id., sec. 187.)

And the two required must act in *concert of will and endeavor, as distinguished from a mere several attempt without such consent, to accomplish the particular wrong.* (2 Bishop on Crim. Law, sec. 190.) Appellee has reluctantly reached the conclusion that the first question propounded by the court must be answered in the negative.

2d. "When the indictment alleges a conspiracy between three, is the charge supported by proof that only two conspired?"

A conspiracy is an agreement entered into between two or more

persons to commit a named felony. Two is the minimum number required by the law, and when this number is shown by the evidence to have entered into the agreement, the demand of the law in this particular, it would seem, is met. When three persons are indicted for conspiracy, proof against either one of them, whether tried alone or with the others, or one of the others, that he conspired with one of the others who has not been actually acquitted, is sufficient to support the allegations in the indictment as to the one on trial. (2 Bishop on Crim. Law, sec. 188.)

A husband and wife cannot be conspirators alone. But the wife may be joined with her husband in an indictment for conspiracy, if there is also another conspirator with them. (2 Bish. Crim. Law, sec. 187.) If upon the trial the proof showed that the wife was coerced by her husband to enter into the conspiracy, she ought to be acquitted; while, if the proof showed the conspiracy between the husband and the other conspirator, their conviction would evidently be supported by the evidence.

Again, if three were indicted for a conspiracy, and the evidence against one consisted of his confession, and the witness to whom he confessed became incompetent to testify before the trial, and for the want of the testimony of such witness this conspirator were acquitted, while the proof was overwhelming as to the other two, surely the proof would sustain the allegations as to them.

The conclusion of appellee is that the second question propounded by the court must be answered in the affirmative.

WILLSON, JUDGE. This appeal is from a conviction under an indictment charging the defendant with conspiring with Ben. Hunt and Charles Withers to commit the crime of burglary.

There is no evidence proving that Withers entered into the alleged conspiracy, or had any knowledge of or connection with it. On the contrary, Hunt, the other alleged conspirator, who was the principal witness in behalf of the State, testified that Withers did not enter into the conspiracy. Said Hunt testified that the defendant and himself entered into a positive agreement to commit the burglary,— that witness, at the time of entering into said agreement, had no intention of committing the burglary, but that his sole purpose and intent in making said agreement was to entrap the defendant, as he suspected that said defendant was contemplating the commission of some offense.

Among other things, the court instructed the jury that, if they believed from the evidence that the conspiracy was entered into

between Hunt and the defendant, the offense was complete, and the State was not required to prove that Withers was also a party to the conspiracy. Upon this subject the defendant requested a special instruction as follows: "The State has charged a conspiracy between defendant, B. B. Hunt, and Chas. Withers, and this allegation must be proved beyond a reasonable doubt." This instruction was refused. Defendant requested a further charge that "the State must make out a conspiracy as alleged;" which was also refused. Exceptions were saved by defendant to the charge of the court, and to the action of the court refusing the requested instructions.

In general, "it is sufficient to prove so much of the indictment as shows the defendant to have been guilty of the substantive crime therein stated, though not to the full extent charged on him." (Whart. Cr. Ev., § 129.) Mr. Bishop says, "the proof for the prosecution should cover every particular, whether of act or intent, or of the place or time of the act, essential in a *prima facie* case. But it need not extend to surplusage, unless rendered material by the form of the allegation." (1 Bish. Cr. Proc., § 1052.) Chief Justice Shaw, in *Com.* v. *Griffin*, 21 Pick., 523, stated the rule in the following language: "Although the general rule is, that every material averment must be proved, yet it by no means follows that it is necessary to prove the offense charged to the whole extent laid. It is quite sufficient to prove so much of the charge as constitutes an offense punishable by law."

In this case, if the agreement between Hunt and the defendant was in law a conspiracy, the proof established such conspiracy, and the substantive crime charged in the indictment was proved, and the allegation that Withers was a party to such conspiracy was surplusage, and not rendered material by the form of the allegation; and hence it was not necessary to prove such allegation. This seems to have been the view of this court in *Paul* v. *The State*, 12 Texas Ct. App., 346, where the same question occurred, but was not discussed by the court,— the case having been disposed of upon another ground. Our opinion is that the trial court did not err in giving the charge complained of nor in refusing the special charges mentioned.

The paramount question in the case is, does the agreement between Hunt and the defendant, within the meaning of the law, constitute the offense of conspiracy? Our Penal Code defines the offense of conspiracy to be a positive agreement entered into between two or more persons to commit one of certain named offenses, burglary being one of the offenses named. (Penal Code, arts. 800, 802, 804.)

An "agreement," as defined by Webster, is "the union of two or more minds in a thing done or to be done. A coming or knitting together of minds." One of the definitions of the term given by Bouvier is: "A coming together of parties in opinion or determination; the union of two or more minds in a thing done or to be done; a mutual assent to do a thing." Another definition quoted by the last named author is, that it "consists of two persons being of the same mind, intention, or meaning, concerning the matter agreed upon." (1 Bouv. Law Dic., title "Agreement.")

Such being the recognized meanings of the term "agreement," we are of the opinion that the transaction between Hunt and the defendant did not constitute such a union of their minds, such a concurrence of purpose, intention and determination, as the law contemplates in defining a conspiracy. Hunt at no time intended to commit, or to assist in the commission of, the burglary. His assent that it should be committed was feigned, not real. If it was in the mind of the defendant to commit the burglary, Hunt was not of the same mind, for he did not intend to commit it or aid in its commission, but on the contrary he intended to prevent its commission. There was in fact no agreement on his part to engage in the commission of the burglary. There was in fact no union or concert of his will with that of the defendant, and such union or concert of wills must exist to constitute conspiracy. (2 Bish. Cr. Law, § 190.) A conspiracy cannot be committed by one person alone. (Id., § 187.)

This being our view of the law, we hold that the evidence fails to prove a conspiracy, and the conviction is therefore set aside, and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered February 20, 1886.]